Argued and submitted February 28, affirmed May 15, 2003

# STATE OF OREGON,
*Respondent,*

*v.*

# MARSHALL LOVEJOY SNYDER,
*Appellant.*

## D9801146T; A111712

69 P3d 802

David E. Groom, Acting Executive Director, Office of Public Defense Services Defender, argued the cause for appellant. With him on the brief was Beth A. Corbo, Deputy Public Defender.

Daniel J. Casey, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

BREWER, J.

## BREWER, J.

Defendant appeals his conviction for driving under the influence of intoxicants (DUII). ORS 813.010.[1] He assigns error to the trial court's admission of documentary and testimonial evidence of the results of a chemical analysis of his blood alcohol content. Specifically, he contends that the state failed to lay a foundation for that evidence as required by ORS 813.160(1)(a).[2] Although we conclude that the evidence was erroneously admitted, we affirm because the error was harmless.

Defendant was involved in a car accident. Officer McLeod observed defendant at the scene of the accident and also in the hospital emergency room. At the hospital, defendant's blood was drawn for a chemical blood alcohol analysis. In the aftermath of the incident, defendant was prosecuted for DUII. On the day of trial, defendant made an oral motion *in limine* to exclude evidence of the results of the chemical analysis. The trial court denied the motion.

---

[1] ORS 813.010 provides, in part:

"(1) A person commits the offense of driving while under the influence of intoxicants if the person drives a vehicle while the person:

"(a) Has .08 percent or more by weight of alcohol in the blood of the person as shown by chemical analysis of the breath or blood of the person made under ORS 813.100, 813.140 or 813.150;

"(b) Is under the influence of intoxicating liquor, a controlled substance or an inhalant; or

"(c) Is under the influence of any combination of intoxicating liquor, an inhalant and a controlled substance."

Neither the state nor defendant designates the paragraph of ORS 813.010(1) under which defendant was convicted, probably because the state submitted the case to the jury under both paragraphs (1)(a) and (b). In his opening statement, the prosecutor explained:

"And, we have to prove one of these two following things * * *.

"* * * * *

"We have to prove that at that time he was driving, he was either above the point 08, or if that's not proven, or if we never offered evidence of that, we have to prove * * * he was under the influence of alcohol."

Ultimately, it does not matter on which theory the jury convicted defendant because, as we discuss in our harmless error analysis below, defendant did not dispute that he was intoxicated, only that he was driving.

[2] The statute is set out below.

At trial, the results of the analysis were admitted into evidence in the form of a certified copy of a hospital record, authenticated by the affidavit of the records custodian, and through the testimony of McLeod. McLeod read the hospital record and stated that the results correlated to a .17 blood alcohol content. Defendant testified in his own defense. In response to direct examination by his counsel, he stated, "I—obviously, I was drunk. I'm not saying that I was not drunk." In his closing argument, defense counsel stated, "And the question here obviously is not that he was drunk, but that he drove the car" and "[Defendant] drank until he was in the blackout stages of intoxication and the blackout stages of intoxication doesn't mean necessarily the person can't carry a conversation, it just means that he can't remember anything after the event." The jury convicted defendant.

On appeal, defendant asserts ·that the trial court erred in admitting evidence of the chemical analysis of his blood because the state was required, but failed, to prove that the evidence satisfied the foundational requirements established by ORS 813.160.[3] That statute provides, in part:

"(1)   To be valid under ORS 813.300:

"(a)   Chemical analyses of a person's blood shall be performed by an individual shown to be qualified to perform such analyses and shall be performed according to methods approved by the Department of Human Services. For purposes of this paragraph, the Department of Human Services shall approve methods of performing chemical analyses of a person's blood that are satisfactory for determining alcoholic content."

The state concedes that it did not present evidence that the chemical analysis complied with that statute. The record does not disclose who performed the analysis, whether the person was "qualified," the methods used to perform the analysis, and whether those methods were approved by the Department of Human Services.

___

[3] Although the 1999 versions of the statutes apply in this case, the 2001 versions are identical.

Nevertheless, the state asserts that, in light of ORS 813.320(2)(a), it was not required to prove compliance with ORS 813.160(1)(a). ORS 813.320 provides, in part:

"(2)  The provisions of the implied consent law shall not be construed by any court to limit the introduction of otherwise competent, relevant evidence of the amount of alcohol in the blood of a defendant in a prosecution for driving while under the influence of intoxicants if:

"(a)  The evidence results from a test of blood taken from the defendant while the defendant was hospitalized or otherwise receiving medical care, whether or not the defendant consented to the drawing of blood or to the test[.]"

The state argues that the evidence of the chemical analysis results was admissible because the blood was taken while defendant was receiving medical care at a hospital and the evidence was "otherwise competent." In particular, the state asserts that the legislature intended the exception for "otherwise competent" evidence to be a broader exception than the one for "otherwise admissible" evidence in ORS 136.432, which limits the court's authority to exclude relevant evidence but does not relieve the state from establishing the "foundational requirements" in ORS 813.160(1). *See State v. Warner*, 181 Or App 622, 634-35, 47 P3d 497, *rev den*, 335 Or 42 (2002); *State v. Chipman*, 176 Or App 284, 294, 31 P3d 478 (2001).[4]

■     The parties' disagreement presents a problem of statutory interpretation, which we resolve using the methodology established by *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). We first consider the text of ORS 813.320(2) in context. *PGE*, 317 Or at 610-11. Assuming without deciding that ORS 813.160(1)(a) is a "provision[ ] of the implied consent law" within the meaning of ORS 813.320(2),[5] we conclude that the

---

[4] The state disclaims reliance on ORS 136.432 as direct authority for the admission of evidence of the chemical analysis results without a showing of compliance with ORS 813.160(1)(a). As the state correctly notes, our decision in *Chipman* forecloses such an argument.

[5] On its face, ORS 813.320(2) applies to the "provisions of the implied consent law," but it does not identify any specific statutes as comprising the "implied consent law." Subsection (1) of ORS 813.320, which contains the same phrase, was originally enacted in 1973 and designated specific statutes as the "implied consent

phrase "otherwise competent" in the latter statute nonetheless required the state to demonstrate compliance with ORS 813.160(1)(a).

■     "Competent," when used to describe evidence, is a legal term of art, and we therefore look to its "well-established legal meaning." *McIntire v. Forbes*, 322 Or 426, 431, 909 P2d 846 (1996) ("Analysis of text also includes reference to well-established legal meanings for terms that the legislature has used."). Ordinarily, "competence" is a foundational requirement that qualifies evidence to establish a particular fact for a particular purpose. Depending on the context, such a requirement may derive from decisional law, legislation, or some other source. *See, e.g., Kotera v. Daioh Int'l U.S.A. Corp.*, 179 Or App 253, 271 n 14, 40 P3d 506 (2002) (noting that "an unsworn statement is not competent evidence in Oregon courts for establishing jurisdictional facts"); *see also* ORCP 47 D; OEC 601; OEC 703.[6]

_____

law," including the predecessor to ORS 813.160(1)(a). Or Laws 1973, ch 465, § 1. During the process of revising the Motor Vehicle Code and reenacting it as ORS chapter 813, the 1983 legislature deleted those specific statutory references and enacted ORS 801.010(3), which provides, "ORS 813.100, 813.131, 813.132, 813.140, 813.150, 813.310, 813.320 and 813.410 to 813.440 may be cited as the Motorist Implied Consent Law." *See* Or Laws 1983, ch 338, §§ 596, 978; Or Laws 1985, ch 16, §§ 2, 302. *See also State v. Reddish*, 78 Or App 219, 223 n 3, 715 P2d 495 (1986) (noting that the "only significant modification" to the prior version of ORS 813.320(1) is that it "no longer refers to any particular sections as constituting the Implied Consent Law" and that it is an "open question" whether it prohibits exclusion of evidence obtained in violation of a statute to which it no longer specifically refers). The parties do not raise the issue of whether ORS 813.320 applies to violations of ORS 813.160(1)(a) and, because of our disposition of this case, we need not address it.

[6] Even if evidence is otherwise admissible, it may not be competent to prove a particular material fact. In that regard, we note that, unfortunately, the terms "competent" and "admissible" often are used interchangeably, particularly to define one another. *See, e.g., State ex rel Children's Serv. Div. v. Page*, 66 Or App 535, 538, 674 P2d 1196 (1984) ("Evidence is 'competent' when it is relevant, material and admissible * * *."); *State v. Moylett*, 313 Or App 540, 546-47, 836 P2d 1329 (1992) (describing prior case as "recognizing principle that blood alcohol test derived from nonconsensual, warrantless seizure of a blood sample only admissible if otherwise relevant and competent, as to crimes other than DUII"). *Black's Law Dictionary* 577 (7th ed 1999) defines "competent evidence" as "**1.** See *admissible evidence*. **2.** See *relevant evidence*." (emphasis in original), and it defines "incompetent evidence" as "[e]vidence that is for any reason inadmissible." *Id.* at 578. However, it defines "incompetent" as "**2.** (Of evidence) inadmissible," *id.* at 769, and then notes, "This sense is often criticized, as in the quotation below.

   " '[*Incompetent*] is constantly used loosely as equivalent to "inadmissible" on any ground. This use should be avoided.' John H. Wigmore, *A Students' Textbook of the Law of Evidence* 36 (1935)."

■ The context of ORS 813.320(2) supports that interpretation. According to ORS 813.160(1), "[t]o be valid under ORS 813.300," a chemical analysis of a person's blood must comply with directives set out in ORS 813.160(1). ORS 813.300 establishes the legal significance of the results of such an analysis; for example, under subsection (2), a result of "[n]ot less than .08 percent by weight of alcohol in a person's blood" constitutes legal intoxication. As we previously have recognized, the "to be valid" phrase establishes a "foundational requirement." *Warner*, 181 Or App at 634. As discussed, competence likewise is a foundational requirement that qualifies evidence to prove a particular fact for a particular purpose. In this case, the challenged evidence was offered to establish defendant's blood alcohol content for the purpose of showing that he was intoxicated. As pertinent here, then, evidence of the results of a chemical analysis was not "otherwise competent" to prove defendant's blood alcohol content for that purpose unless the foundational requirements of ORS 813.160(1)(a) were satisfied.

Our interpretation is consistent with the Supreme Court's decision in *State v. Heintz*, 286 Or 239, 594 P2d 385 (1979). *Heintz* was a manslaughter case interpreting *former* ORS 487.820 (1977), *repealed by* Or Laws 1983, ch 338, § 978, the predecessor to ORS 813.320. At that time, *former* ORS 487.815(1) (1977), *repealed by* Or Laws 1983, ch 338, § 978, the predecessor to ORS 813.160, required that chemical analyses be performed by a person "possessing a valid permit * * * issued by the Health Division." The defendant argued that the challenged blood test evidence was inadmissible under *former* ORS 487.820, providing that provisions of the implied consent law shall not be construed to limit the introduction of "otherwise competent, relevant evidence" in non-DUII proceedings, because the state had not shown that the technician who performed the analysis had the permit required by *former* ORS 487.815(1). The Supreme Court rejected that argument. The court held that the evidence was "competent, relevant evidence," because the person performing the analysis was a nationally certified medical laboratory

---

*Id.* (emphasis in original). That criticism is justified. The terms do not have identical meanings.

technician with substantial prior experience in performing such analyses, and she had used a procedure approved by the Health Division. *Heintz*, 286 Or at 252-54.

■ *Heintz* did not dispense with the requirement that the state lay a foundation for the admission of chemical blood analysis results; it merely held that the requisite foundation could be laid by some means other than strict adherence to the requirements of *former* ORS 487.815(1).[7] Indeed, current ORS 813.160(1)(a) requires a foundational showing that is substantially identical to the one that the court in *Heintz* concluded was sufficient for such evidence to be deemed "competent" under *former* ORS 487.820. However, here, unlike in *Heintz*—where a foundation regarding the blood test results was laid by the lab technician who performed the test—the results were offered through the testimony of a police officer who had no apparent knowledge about the qualifications of the person performing the analysis or the methods by which it was conducted. Thus, even under the reasoning in *Heintz*, the evidence in this case was not "otherwise competent."

The state nonetheless remonstrates that the certified hospital record, coupled with testimony that, in accordance with ORS 813.320(2)(a), the blood draw was "taken from the defendant while the defendant was hospitalized," rendered evidence of the amount of alcohol in defendant's blood "otherwise competent." We disagree. If mere satisfaction of other conditions specified in subsection (2)(a) could themselves render chemical blood analysis evidence "otherwise competent," the latter requirement would be superfluous. Such a construction would run afoul of ORS 174.010, which provides that, "[i]n the construction of a statute, * * * where there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all."

In summary, we conclude that, for purposes of ORS 813.320(2), the state must demonstrate compliance with ORS 813.160(1)(a) in order for evidence of a chemical analysis to be "otherwise competent" to prove a defendant's blood

---

[7] *Heintz* was decided before the Supreme Court adopted its current statutory construction methodology.

alcohol content. Because the state failed to do so in this case, the trial court erred in admitting the challenged evidence.

■      However, evidentiary error is not presumed to be prejudicial, and we will not remand for a new trial if we conclude, based on an evaluation of the relative strengths of the parties' evidence and the significance of the erroneously admitted evidence, that there was little likelihood that the error affected the verdict. *State v. Cunningham*, 179 Or App 359, 381-82, 40 P3d 1065, *adh'd to on recons*, 184 Or App 292, 57 P3d 149 (2002). In *State v. McGinnis*, 335 Or 243, 250, 64 P3d 1123 (2003), the Supreme Court addressed whether the erroneous admission of body-wire evidence in violation of a statute, *former* ORS 133.724, was harmless in light of the defendant's own testimony. The court stated, "When a defendant testifies * * * and admits the substance or truthfulness of the matters contained in the erroneously admitted evidence, the facts established by the in-court admissions may eliminate any harm associated with the erroneously admitted evidence." *McGinnis*, 335 Or at 250. The court rejected the defendant's argument that his testimony could not be considered in a harmless error review "unless the state can show that the defendant would have testified regardless of the trial court's alleged error in admitting the state's evidence." *Id.* at 251.

The court's reasoning was based on several decisions of the United States Supreme Court that concerned the consequences of using a defendant's unlawfully compelled extrajudicial confession at trial, not the consequences of erroneously admitting any other type of evidence. According to the court, the federal decisions preclude the use, in a harmless error analysis, of a defendant's own testimony only if that testimony was "compelled" by the erroneous admission of an illegally obtained confession. *Id.* at 253. The court concluded that, even if it were assumed that the defendant was compelled to testify because of the erroneous admission of the body-wire evidence, the latter evidence was "not analogous to an illegal confession." *Id.* Although the court acknowledged that it was not required to follow the federal rule for purposes of Oregon constitutional or statutory law, it was "persuaded by the logic of" that rule. *Id.* It concluded that, because the defendant's statements captured in violation of the body-wire

statute were themselves "not compelled in any way," *id.* at 253-54, their admission did not "vitiate the voluntariness of [his] subsequent decision to testify in his own behalf," *id.* at 254, and there was "no reason to exclude [his] testimony from a review of the record for harmless error." *Id.*

Applying those principles to this case, we first conclude that the erroneously admitted evidence of defendant's blood alcohol content was not the equivalent of an illegally obtained confession. The admission of that evidence therefore did not vitiate the voluntariness of defendant's subsequent testimony at trial that "I—obviously, I was drunk. I'm not saying that I was not drunk." Consequently, in analyzing whether admission of the blood alcohol test results was harmless, we may consider defendant's testimony at trial. Having done so, we conclude that that testimony rendered harmless the error in admitting the blood alcohol evidence.

We reject without discussion defendant's assignment of error relating to his statutory speedy trial claim.

Affirmed.