Argued and submitted March 8, decision of the Court of Appeals reversed in part and affirmed in part; judgment of the circuit court affirmed September 23, 2004

## STATE OF OREGON,
*Petitioner on Review,*

*v.*

## MARSHALL LOVEJOY SNYDER,
*Respondent on Review.*

## (D9801146T; CA A111712; SC S50672)

97 P3d 1181

Daniel J. Casey, Assistant Attorney General, Salem, argued the cause and filed the briefs for petitioner on review. With him on the opening and reply briefs were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General. With them on the supplemental reply brief was Robert M. Atkinson, Assistant Attorney General.

Ernest G. Lannet, Deputy Public Defender, Salem, argued the cause for respondent on review. With him on the briefs were Peter A. Ozanne, Executive Director, Office of Public Defense Services, and Peter Gartlan, Chief Defender.

BALMER, J.

**BALMER, J.**

■    This case presents two issues for review. The first is whether the state may petition this court for review of a decision of the Court of Appeals when the state obtained the disposition that it sought in that court, but challenges one of the court's holdings. The second issue, which arises only if the state prevails on the first, is whether, during defendant's trial for driving under the influence of intoxicants (DUII), the trial court erred in admitting results of a blood alcohol test into evidence under ORS 813.320(2)(a) when the state failed to meet the requirements of ORS 813.160(1)(a).[1] The Court of Appeals held that the trial court should not have admitted the results of defendant's blood alcohol test under ORS 813.320(2)(a),[2] but affirmed defendant's DUII conviction on the ground that the error was harmless. *State v. Snyder*, 187 Or App 648, 656-57, 69 P3d 802 (2003).

For the reasons that we discuss below, we hold that the state was aggrieved by the decision of the Court of Appeals, that ORS 2.520[3] therefore authorizes the state to seek review of that decision in this court, and that this dispute continues to present a justiciable controversy. We also

---

[1] The Court of Appeals stated that the 1999 versions of the statutes apply to this case. *State v. Snyder*, 187 Or App 648, 651 n 3, 69 P3d 802 (2003). However, the incident for which defendant was charged occurred in 1998; consequently, the 1997 statutes—rather than the 1999 amendment to ORS 813.320, which added paragraph (2)(a) at issue here—properly apply. At defendant's trial, which took place in 2000, the state argued that the 1999 amendments applied and defendant did not object. Nor did defendant raise an objection on that ground before the Court of Appeals or this court. Because the parties have not raised that issue, we take the case as presented and continue to consider the application of the 1999 statutes to defendant.

[2] ORS 813.320(2) provides:

"The provisions of the implied consent law shall not be construed by any court to limit the introduction of otherwise competent, relevant evidence of the amount of alcohol in the blood of a defendant in a prosecution for driving while under the influence of intoxicants if:

"(a) The evidence results from a test of blood taken from the defendant while the defendant was hospitalized or otherwise receiving medical care, whether or not the defendant consented to the drawing of blood or to the test[.]"

[3] ORS 2.520 provides:

"Any party aggrieved by a decision of the Court of Appeals may petition the Supreme Court for review within 35 days after the date of the decision, in such manner as provided by rules of the Supreme Court."

hold that ORS 813.320(2)(a) creates an exception to the specifications for blood alcohol tests otherwise required by ORS 813.160 (1999), *amended by* Oregon Laws 2003, chapter 19, section 1.[4] Accordingly, we reverse in part and affirm in part the decision of the Court of Appeals and affirm the judgment of the trial court.

## FACTS

The material facts of the case are not in dispute, and we take them from the Court of Appeals opinion and the record. Defendant was charged with DUII after being involved in a single-car accident. The arresting officer, McLeod, found defendant lying injured a short distance from his car. Defendant was taken to a hospital emergency room where his injuries were treated and his blood was drawn for the purpose of performing a chemical analysis. Officer McLeod also was present at the emergency room, and he observed defendant's behavior there.

Before trial, defendant moved *in limine* to exclude the results of the chemical analysis performed at the hospital on the ground that the state had not provided the foundation for that evidence that ORS 813.160 requires. Specifically, defendant argued that the state had not provided a witness to testify that the person who had administered the test was qualified to administer such a test or that the blood test had been administered in accordance with Health Division methodology, both of which are required by ORS 813.160.

---

[4] Throughout this opinion, we refer to the 1999 version of ORS 813.160, which provided, in part:

"(1) To be valid under ORS 813.300 [which provides that not less than .08 percent blood alcohol constitutes being under the influence of intoxicating liquor]:

"(a) Chemical analyses of a person's blood shall be performed by an individual shown to be qualified to perform such analyses and shall be performed according to methods approved by the Health Division. For purposes of this paragraph, the Health Division shall approve methods of performing chemical analyses of a person's blood that are satisfactory for determining alcoholic content."

In 2003, the legislature amended that statute by specifying the licensing and accreditation requirements for a laboratory where a chemical analysis is performed for that analysis to be valid under ORS 813.300, but those amendments do not affect the decision here. *See* Or Laws 2003, ch 19, § 1. All subsequent references to ORS 813.160 are to the 1999 version.

Defendant further argued that, because ORS 813.160 is not a provision of the implied consent law, the blood test evidence did not fall within the exception in ORS 813.320(2)(a) that "provisions of the implied consent law shall not be construed * * * to limit the introduction of otherwise competent, relevant evidence" in a DUII prosecution. Finally, defendant asserted that, because the court had no way to ascertain whether the person who had administered the chemical analysis and had analyzed its results was qualified to do so or what the hospital's printout of those results actually indicated about the level of alcohol in defendant's blood, the results of his chemical blood analysis were inadmissible due to a lack of foundation.

The state responded that ORS 813.160 is a provision of the implied consent law and, therefore, under ORS 813.320(2)(a), cannot be construed to limit the introduction of "otherwise competent, relevant evidence" of the amount of alcohol in a defendant's blood if the "evidence results from a test of [the defendant's blood] while the defendant was hospitalized."

The trial court denied defendant's motion and, at defendant's trial, allowed the state to introduce a certified copy of the hospital records that had been authenticated by the affidavit of the records custodian. Officer McLeod then read the hospital record into the trial court record and stated that the chemical analysis results correlated to a .17 percent blood alcohol content. The state did not present evidence as to who had tested defendant's blood sample or whether that person had followed testing methods approved by the Health Division. Defendant testified in his own defense and, on direct examination, stated "I—obviously, I was drunk. I'm not saying that I was not drunk."[5]

A jury convicted defendant of DUII, ORS 813.010. Defendant appealed, asserting that the trial court had erred in admitting the evidence of the chemical analysis of his blood because the state had failed to lay the foundation for that evidence that ORS 813.160(1)(a) requires.[6] Before the

---

[5] Defendant's theory at trial was that he was not the driver of the car.

[6] As noted above, in his argument to the trial court, defendant questioned whether "anybody in the court can tell whether or not somebody competent took

Court of Appeals, the state argued that its failure to show compliance with ORS 813.160(1)(a) did not require the results of defendant's chemical blood analysis to be excluded because those results qualified for admissibility as "otherwise competent, relevant evidence" under ORS 813.320(2)(a). In the alternative, the state argued that, if the trial court had erred by admitting those results, that error was harmless in light of defendant's admission that he had been intoxicated at the time of the accident.

The Court of Appeals held that the trial court had erred in admitting the results of defendant's chemical analysis because the state did not show that the analysis was administered in compliance with ORS 813.160. *Snyder*, 187 Or App at 652-56. However, the court affirmed defendant's conviction based on its conclusion that the error was harmless because defendant had testified voluntarily at trial that he was drunk. *Id.* at 657.[7]

## ORS 2.520 AND JUSTICIABILITY

Defendant has raised a threshold issue that we must consider before we may reach the statutory interpretation question. Defendant argues that we lack jurisdiction over this case as both a statutory and constitutional matter. He claims that (1) the state is not an "aggrieved party" that may petition for review under ORS 2.520; and (2) because this case no longer presents a justiciable controversy, this court lacks the constitutional authority to decide this case.

---

the test and analyzed the test results[,]" suggesting that defendant challenged the competence of the blood test results generally, as well as arguing that the state had failed to meet the requirements of ORS 813.160. On appeal, however, defendant's only argument was that the trial court admitted the "evidence of defendant's blood draw without requiring the state to lay the foundation required by ORS 813.160(1)." That was the issue that the Court of Appeals decided. *Snyder*, 187 Or App at 655-56 ("For purposes of ORS 813.320(2), the state must demonstrate compliance with ORS 813.160(1)(a) in order for evidence of a chemical analysis to be 'otherwise competent' to prove a defendant's blood alcohol content."). That also was the issue on which the state sought review in this court. Accordingly, the separate question whether the blood test evidence here was inadmissible because it was not "competent" for some reason other than lack of compliance with ORS 813.160(1)(a) is not properly before the court.

[7] Before the trial court and the Court of Appeals, defendant also argued that he had been denied his statutory right to a speedy trial. The Court of Appeals rejected that argument without discussion. 187 Or App at 657. We do not address that issue, because defendant has not raised it before this court.

■■ We consider the parties' statutory arguments first. *State v. Hancock*, 317 Or 5, 9, 854 P2d 926 (1993). In Oregon, the right to appeal is wholly statutory and is subject to any limitations imposed by the statute conferring the right. *State v. Adams*, 315 Or 359, 364, 847 P2d 397 (1993) (citing *Logsdon v. State and Dell*, 234 Or 66, 70, 380 P2d 111 (1963)); *Ragnone v. Portland School District No. 1J*, 289 Or 339, 341 n 1, 613 P2d 1052 (1980). ORS 2.520 confers jurisdiction on this court following a decision by the Court of Appeals and provides that "any party aggrieved by a decision of the Court of Appeals may petition" this court for review. The question before us, then, is one of statutory interpretation: Is the state in this case "aggrieved" under the meaning of that term in the statute?

Defendant contends that, because the state prevailed on the merits in the Court of Appeals, it is not "aggrieved" under ORS 2.520 and, for that reason, this court lacks jurisdiction over this proceeding. The state argues that this court's decision in *Palmer v. State of Oregon*, 318 Or 352, 867 P2d 1368 (1994), dealt with an identical situation. In that case, this court held that the state was "aggrieved" under ORS 2.520 because the Court of Appeals had ruled against the state on the threshold issue whether the petitioner was permitted to assert the claim that he did, even though the state prevailed on the merits:

> "The state does not challenge the Court of Appeals' disposition of the case, but rather challenges that court's *rationale* for its disposition of petitioner's second claim for relief. ORS 2.520 provides that '[a]ny party *aggrieved* by a decision of the Court of Appeals may petition the Supreme Court for review.' (Emphasis supplied.) In this case, the state is 'aggrieved' by the conclusion of law reached by the Court of Appeals that is discussed in this opinion because, if incorrect, the rationale of the lead opinion in the Court of Appeals will force the state to defend the merits of many future claims for post-conviction relief that it should not be required to defend."

*Palmer*, 318 Or at 355 n 5 (emphasis in original). Here, we similarly conclude that the state was "aggrieved" and take the opportunity to explain that result.

■ When interpreting a statute, we must attempt to discern the intent of the legislature, and, in doing so, we are guided by the methodology of *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). Pursuant to that methodology, we first consider the text and context of the statute. *Id.* at 610-11. We also consider, at the first level of analysis, prior case law from this court that interprets the same statutory wording. *Robinson v. Nabisco, Inc.*, 331 Or 178, 184, 11 P3d 1286 (2000).

The text of ORS 2.520 requires that a party must be "aggrieved" by a decision of the Court of Appeals to petition this court for review. As noted above, in *Palmer* this court interpreted ORS 2.520 to permit a party to petition this court for review of a Court of Appeals decision notwithstanding the fact that the party had obtained the disposition that it had sought from the Court of Appeals. The party seeking review in *Palmer*—the state—asserted that the "rationale" of the Court of Appeals in that case would force it "to defend the merits of many future claims for relief that it should not be required to defend." *Palmer*, 318 Or at 355 n 5. This court agreed that, if the "conclusion of law" that the Court of Appeals had reached was incorrect, then the state indeed would have to defend on the merits future claims that it should not be required to defend. *Id.* Accordingly, it concluded that the state was "aggrieved" by the Court of Appeals decision, as that term is used in ORS 2.520. *Id.*

Here, the state argues that it is "aggrieved" by the Court of Appeals decision in the same way that the state was "aggrieved" by the Court of Appeals decision in *Palmer*: If the "conclusion of law" that the Court of Appeals reached is incorrect, then the state will be required to take additional steps to introduce certain evidence in DUII cases that it should not be required to take. We perceive no meaningful distinction between *Palmer* and this case and therefore conclude that the state is "aggrieved" by the Court of Appeals decision in this case and is permitted by ORS 2.520 to seek review of that decision in this court.

■ Defendant's second argument is that, even if the state is "aggrieved" under ORS 2.520, no justiciable controversy exists in this case because (1) the legal interests of the

parties are not adverse, and (2) this court's decision will not have any practical effect on the rights of the parties to the controversy. According to defendant, any decision by this court will not affect the "legal relationship between the parties," nor does defendant have any interest in the outcome of the case. Defendant asserts that, because there is no longer a justiciable controversy, this court lacks authority to consider the merits of this case.

■■ This court has held that the judicial power of the state is limited to deciding existing controversies between parties. *Yancy v. Shatzer*, 337 Or 345, 97 P3d 1161 (2004); *Barcik v. Kubiaczyk*, 321 Or 174, 188-89, 895 P2d 765 (1995). For a controversy to be justiciable, the parties to the controversy must have adverse legal interests and the court's decision in the matter must have some practical effect on the rights of the parties. *Brumnett v. PSRB*, 315 Or 402, 405, 848 P2d 1194 (1993). We conclude that those two requirements are satisfied here.

This court has noted previously that "[m]any justiciable controversies go by default or without opposition" and has determined that adversity exists even in cases in which no respondent appears. *Teledyne Industries v. Paulus*, 297 Or 665, 671, 687 P2d 1077 (1984). *Teledyne* is one such example. In that case, the petitioners challenged a ballot measure explanation prepared by a citizens' committee for use in a voters' pamphlet and named the Secretary of State, but not the citizens' committee, as respondent. *Id.* at 667. The relevant statute did not require the Secretary of State to defend the voters' pamphlet explanation, and the Secretary of State took no position on the petitioners' proposed modification to that explanation. *Id.* at 667-69. This court concluded that the fact that the citizens' committee and the Secretary of State *could* appear to contest the proposed modification was "sufficient to provide the adversary character of the proceeding that makes the issues justiciable." *Id.* at 670. *See also Conkling v. Keisling*, 316 Or 390, 400, 852 P2d 183 (1993) (Van Hoomissen, J., specially concurring) (noting that no party appeared to defend citizens' committee statement in challenge to ballot measure explanation). That conclusion— that the mere possibility that parties to a proceeding could take opposing positions satisfies the adversity requirement—

demonstrates the low threshold for determining the existence of adverse legal interests.

Here, both parties not only appear, but they make vigorous arguments to this court on behalf of their competing interpretations of the statutes at issue and their differing legal interests. Their arguments to this court parallel the differing views of the statute that they presented to the trial court and the Court of Appeals. Such continuing disagreement is sufficient to satisfy the adversity requirement. *See Brumnett*, 315 Or at 405 (so stating).

We also conclude that our decision in this case will have a "practical effect" on the rights of the parties. Defendant correctly asserts that, because he no longer challenges his DUII conviction, that conviction will not be affected by a decision of this court. However, our decision will have a practical effect on the state, which is the party challenging the decision of the Court of Appeals. Here, no one disputes that the Court of Appeals decision had a practical effect on both parties and that, in the absence of a decision by this court, the Court of Appeals construction and application of the DUII statutes will be controlling on trial courts, the state, and future defendants. As discussed above, the state has been "aggrieved" by the Court of Appeals decision because, if incorrect, that decision improperly will hamper the state's ability to introduce evidence against DUII defendants. *Cf. Palmer*, 318 Or at 355 n 5 (Court of Appeals incorrect rationale would force state to defend merits of future claims that it should not be required to defend). Thus, as in *Palmer*, our decision in this case will have a practical effect. *See also Hart v. Paulus*, 296 Or 352, 357-58, 676 P2d 1384 (1984) ("possibility" that court decision "may affect respondent's future action" meant case was justiciable despite argument that decision would have no "practical consequences").

At its most basic, defendant's argument is that, because he lost in the Court of Appeals and did not seek review, this dispute is moot. That scenario, however, is very different from other cases that this court has dismissed as moot, such as *Yancy*, in which the petitioner's civil exclusion order had expired, 337 Or at 348-49, and *Brumnett*, in which

the petitioner had been released unconditionally from confinement and the court could identify no collateral effect of any error in not releasing him sooner. 315 Or at 406-07. Here, in contrast, a jury convicted defendant of DUII, he appealed that conviction, and it was affirmed. Defendant does not dispute that a criminal conviction carries with it collateral consequences. The fact that defendant chose to end his effort to overturn his conviction by declining to petition for review, while the state chose to seek review, does not render the case moot.

Based on the foregoing analysis, we conclude that a justiciable controversy exists. We now turn to the statutory issues that relate to the disputed blood alcohol analysis.

## USE OF HOSPITAL BLOOD ALCOHOL TEST

■ On the merits, the state and defendant offer conflicting views as to how the two statutes at issue, ORS 813.320(2)(a) and ORS 813.160, should be interpreted in relation to one another.

ORS 813.320 provides, in part:

"(1) The provisions of the implied consent law, except ORS 813.300, shall not be construed by any court to limit the introduction of otherwise competent, relevant evidence in any civil action, suit or proceedings or in any criminal action other than a [DUII] violation * * *.

"(2) The provisions of the implied consent law shall not be construed by any court to limit the introduction of otherwise competent, relevant evidence of the amount of alcohol in the blood of a defendant in a prosecution for [DUII] if:

"(a) The evidence results from a test of blood taken from the defendant while the defendant was hospitalized or otherwise receiving medical care, whether or not the defendant consented to the drawing of blood or to the test; or

"(b) The evidence is obtained pursuant to a search warrant."

ORS 813.160 provides, in part:

"(1) To be valid under ORS 813.300:

"(a)   Chemical analyses of a person's blood shall be performed by an individual shown to be qualified to perform such analyses and shall be performed according to methods approved by the Health Division. For purposes of this paragraph, the Health Division shall approve methods of performing chemical analyses of a person's blood that are satisfactory for determining alcoholic content."

For the sake of clarity, we explain briefly the statutory scheme for DUII prosecutions—in particular, the relationship between ORS 813.300, ORS 813.160, and ORS 813.320—before addressing the parties' arguments. ORS 813.300(2) sets out the percentage of alcohol in a person's blood that constitutes "being under the influence of intoxicating liquor." ORS 813.300(2) (stating that .08 percent constitutes "being under the influence of intoxicating liquor"). ORS 813.160 provides how a chemical analysis of a person's blood must be performed for that analysis "[t]o be valid under ORS 813.300[.]"

The issue here is whether ORS 813.320 provides an exception to the specific requirements set out in ORS 813.160. ORS 813.320 has a complicated history. In 1973, the legislature created the statutory predecessor to ORS 813.320, *former* ORS 483.648 (1973). That statute provided, in part:

"The provisions of the implied consent law, ORS 483.634 to 483.646 [* * *] shall not be construed by any court to limit the introduction of otherwise competent, relevant evidence in any civil action, suit or proceedings or to any criminal action other than a [DUII violation] or [driver license suspension for refusing a breath test]."

(Emphasis added.) *Former* ORS 483.648 (1973) expressly included the statutory predecessor to ORS 813.160 as a "provision[ ] of the implied consent law." *See former* ORS 483.644 (1973), *renumbered as* ORS 487.815 (1983), *renumbered again as* ORS 813.160 (1985).

In cases decided before 1999, this court had interpreted that set of statutes—*i.e.*, the earlier versions of ORS 813.300, ORS 813.160, and ORS 813.320—to mean that evidence of a defendant's blood alcohol content that did not satisfy the provisions of the implied consent law must be suppressed in DUII prosecutions, even though that same

evidence could be admissible with respect to other kinds of criminal charges against the same defendant. *See, e.g., State v. Moylett,* 313 Or 540, 547-48, 556, 836 P2d 1329 (1992) (allowing evidence of chemical blood analysis in regard to assault and criminal mischief charges but suppressing same evidence in regard to DUII charge because evidence had not been obtained pursuant to ORS 813.140); *see also State v. Heintz,* 286 Or 239, 254, 594 P2d 385 (1979) (to similar effect under predecessor statute).

In 1999, the legislature amended ORS 813.320 by adding paragraph (2)(a). The issue before us is whether that subsection now permits the state to introduce evidence in a DUII prosecution that does not satisfy the specific requirements of ORS 813.160 that the test and the person administering it comply with Health Division rules and qualifications.

The state argues that, for purposes of ORS 813.320(2)(a), ORS 813.160 is a "provision[ ] of the implied consent law" and thus cannot be construed "to limit the introduction of otherwise competent, relevant evidence of the amount of alcohol in the blood of [the] defendant[.]" Based on its contention that the chemical analysis of defendant's blood in this case was "otherwise competent, relevant evidence," the state argues that the trial court properly admitted that evidence, even though the state did not prove that that analysis complied with the specifications set out in ORS 813.160.

In response, defendant maintains that the evidence proffered by the state was not "otherwise competent" under ORS 813.320(2)(a) because it did not satisfy the specific requirements of ORS 813.160. For that reason, defendant argues, the trial court erred in admitting the evidence.[8]

---

[8] Before this court, defendant also argues that ORS 813.160 is not a "provision[ ] of the implied consent law," and therefore does not come within the exception to the implied consent law requirements created by ORS 813.320(2)(a). The Court of Appeals did not address that issue because, after assuming without deciding that ORS 813.160 is a provision of the implied consent law, the court concluded that the state's evidence was not "otherwise competent" because it did not meet the requirements of ORS 813.160. 187 Or App at 652-53. Moreover, the Court of Appeals noted that there was no need to address the issue, because neither party had raised it before that court. 187 Or App at 652 n 5. Because defendant lost below and failed to argue to the Court of Appeals that ORS 813.160 is not a provision of the implied consent law, we conclude that that argument is not preserved and

The Court of Appeals held that the trial court erred by admitting that evidence because, in the Court of Appeals view, the phrase "otherwise competent" in ORS 813.320(2)(a) required the state to demonstrate compliance with the specifications in ORS 813.160(1)(a). *Snyder*, 187 Or App at 654. The state had asserted that the evidence of the amount of alcohol in defendant's blood was rendered "otherwise competent" by the state's introduction of the certified hospital record, in conjunction with testimony that the blood had been taken from defendant while he was hospitalized, and that the latter testimony demonstrated that the evidence complied with ORS 813.320(2)(a). In rejecting that argument, the Court of Appeals stated that, "[i]f mere satisfaction of other conditions specified in paragraph (2)(a) could themselves render chemical blood analysis evidence 'otherwise competent,' the latter requirement would be superfluous." 187 Or App at 655.

The state asserts that the Court of Appeals statutory interpretation conflicts with the text and context of ORS 813.320(2)(a). The state argues that, by referring to "*otherwise* competent" evidence—as opposed simply to competent evidence—the legislature intended not to exclude chemical blood analysis results as "incompetent" solely for failure to comply with ORS 813.160 or other provisions of the implied consent law. In the state's view, if defendant was hospitalized or otherwise receiving medical care when the blood was taken and the state could prove that the evidence was otherwise competent, ORS 813.320(2)(a) allowed that evidence to be admitted, even if the specific requirements of ORS 813.160(1)(a) had not been met. Moreover, the state contends that the Court of Appeals interpretation amounts to a determination that, if the state cannot show compliance with ORS 813.160, then chemical blood analysis results are never admissible, regardless of whether the defendant was hospitalized or otherwise receiving medical care at the time that

---

decline to consider it. *See State v. King*, 307 Or 332, 338, 768 P2d 391 (1989) (refusing to consider argument made in trial court, but not made in Court of Appeals); ORAP 9.20(2) (if Supreme Court allows review and does not limit questions on review, questions before Supreme Court include all questions properly before the Court of Appeals that petitioner or respondent claims were erroneously decided by that court).

the sample was taken or tested. Because such an interpretation would render ORS 813.320(2)(a) "meaningless," the state argues that "otherwise competent" must mean that the evidence be "competent" in a manner unrelated to the implied consent law—for example, by satisfying chain of custody requirements or meeting foundational requirements established by case law.

Defendant adopts the reasoning of the Court of Appeals that, in the context of evidence resulting from a chemical blood analysis, only evidence that satisfies ORS 813.160(1)(a) is "otherwise competent" evidence under ORS 813.320(2)(a). On appeal, defendant's only challenge to the evidence offered by the state was that the state failed to comply with ORS 813.160(1)(a).

ORS 813.320(2) provides that, if evidence offered to show a DUII defendant's blood alcohol content is *"otherwise* competent," a court shall not construe other provisions of the implied consent law to limit its introduction, provided that the circumstances in paragraph (2)(a) are satisfied.[9] As we explained above, we accept that ORS 813.160 is considered part of the implied consent law for purposes of ORS 813.320(2)(a). *See* 337 Or at 422-23.

The determinative word in ORS 813.320(2) is "otherwise," and, as both parties recognize, it is a word of common usage that has a plain and natural meaning. *See Smoldt v. Henckels & McCoy, Inc.*, 334 Or 507, 511, 53 P3d 443 (2002) ("otherwise" is word of common usage that has plain and natural meaning). "Otherwise" is a comparative word; that is, to construe properly the meaning of the word that "otherwise" is modifying, we must examine the concept or word to which that modified word is being compared. *See, e.g., Webster's Third New Int'l Dictionary* 1598 (unabridged ed 1993) (defining "otherwise," *inter alia,* as "in a different way or manner," "in different circumstances : under other conditions," and "in other respects"). *See also Smoldt,* 334 Or at 511 (similarly defining word "otherwise" as used in statute).

---

[9] Defendant does not dispute that the test of blood at issue here was taken from him while he was receiving medical care at a hospital.

Here, ORS 813.320(2) states that it is the "provisions of the implied consent law" that "shall not be construed to limit the introduction of *otherwise competent*, relevant *evidence* of the amount of alcohol in the blood of a defendant in a [DUII] prosecution[.]" (Emphasis added.) It is apparent from the inclusion of the word "otherwise" in that provision that the legislature intended that the evidence in question be competent "in a different way or manner" than as provided by the implied consent law, as long as the circumstances in paragraph (2)(a) or (2)(b) are satisfied.

To read the statute in the manner that defendant advocates—that, despite the presence of the term "otherwise," ORS 813.320 nonetheless requires the state to satisfy a provision of the implied consent law, ORS 813.160(1)(a), for the evidence it offers to be "competent"—would impermissibly omit or fail to give meaning to a term that the legislature has included in the statute. *See* ORS 174.010 (in interpreting statutes, courts may not omit words that legislature has inserted). Such an interpretation also would conflict with the mandate that we should attempt to give effect to all provisions or particulars of the statute when construing it. *See id.*; *Moustachetti v. State of Oregon*, 319 Or 319, 326, 877 P2d 66 (1994) (citing statute).

Defendant argues that the words "otherwise competent" do have meaning under his proposed interpretation because other provisions of the implied consent law, such as ORS 813.100(1) and ORS 813.140, no longer can be used to exclude chemical blood analysis evidence taken under the circumstances of ORS 813.320(2)(a).[10] Assuming without deciding that defendant's assertion is correct, defendant offers no persuasive explanation why ORS 813.160 should be construed differently than the other implied consent law provisions that defendant claims are affected by paragraph (2)(a),

---

[10] ORS 813.100(1) permits a chemical blood test to be performed if the person is receiving medical care in a health care facility immediately after a motor vehicle accident and has been arrested for DUII, informed of his or her rights and the consequences of agreeing to a test, and consents to the test. ORS 813.140 provides that ORS 813.100 does not preclude the administration of a chemical blood test if the person expressly consents or if the police officer has probable cause to believe that evidence that the person committed DUII will be found from the test and the person is incapable of consenting.

except his contention that that statute is "a foundational requirement." Further undermining defendant's argument is the fact that the legislature could have, but did not, create an exception for ORS 813.160 from the "shall not be construed * * * to limit" directive. *Cf.* ORS 813.320(1) (creating express exception for ORS 813.300).

Based on the foregoing analysis, we conclude that the text and context of ORS 813.320(2) demonstrate that, in enacting that statute, the legislature intended to remove ORS 813.160 as a barrier to introducing evidence of a blood alcohol test taken while a defendant was hospitalized or receiving medical care, provided that the evidence meets competency requirements that are based on a source of law outside of the implied consent law.

We wish to emphasize what we do not decide in this case. The parties have raised no issue, and we have no occasion to determine, what "other" competency requirements might apply respecting evidence of the kind offered in this case. Defendant did not challenge in the Court of Appeals the competency of the evidence that the state offered on any grounds other than its noncompliance with ORS 813.160(1)(a). We can say that we reject the state's suggestion that ORS 813.320(2)(a) in some way relaxes the ordinary foundational requirements that the case law establishes for the admission of blood alcohol test results. But our holding is limited to the conclusion that, when the prerequisites of ORS 813.320(2)(a) are met, the state need not also demonstrate that the blood test results meet the requirements of ORS 813.160(1)(a).

We hold that the Court of Appeals erred in concluding that, for purposes of ORS 813.320(2)(a), the state must demonstrate compliance with ORS 813.160(1)(a) for evidence to be "otherwise competent" to prove a defendant's blood alcohol content and that, because the state did not comply here, the trial court erred in admitting the chemical blood analysis evidence. However, because the Court of Appeals correctly affirmed the trial court on different grounds, we affirm that disposition.

The decision of the Court of Appeals is reversed in part and affirmed in part. The judgment of the circuit court is affirmed.