Argued and submitted November 17, 2022; order of Court of Appeals reversed, appeal dismissed April 6, 2023

# STATE OF OREGON,
*Respondent on Review,*

*v.*

# CHARLES ANTHONY MOTT, JR.,
aka Charles Mott, aka Charles A. Mott,
aka Charles Anthony Mott,
*Petitioner on Review.*

## (CC 19CR39798) (CA A173631) (SC S069349)

527 P3d 758

Defendant appealed a judgment of conviction. The Court of Appeals issued its decision, which, among other things, reversed and remanded defendant's convictions on two nonunanimous counts. Before an appellate judgment issued, defendant filed an unopposed motion to dismiss his appeal. In an unpublished order, the Court of Appeals denied the motion without explanation. Defendant sought review of that order. *Held*: (1) Once an appellant exercises the right to appeal, the court acquires an interest in the proceeding that is inconsistent with the view that an appellant has the unilateral, absolute right of dismissal at any time; (2) because initiation of an appeal implicates case-specific, institutional, and systemic interests, an appellate court may consider a variety of factors in deciding how to resolve an appellant's motion to dismiss; (3) the Court of Appeals' presumption against post-decision dismissal motions that could be overcome only if an appellant established compelling reasons was not justified by either of the two grounds advanced by that court (*i.e.*, its authority to enforce its decisions and institutional and systemic considerations); (4) an explanation of an appellant's reasons for seeking dismissal—whether compelling or not—is not a necessary prerequisite for granting an appellant's motion; and (5) a remand to the Court of Appeals to permit it to undertake its discretionary assessment again was unnecessary because it would be an abuse of discretion to deny the motion where no case-specific, institutional, or systemic factors weighed in favor of doing so.

The order of the Court of Appeals is reversed. The appeal is dismissed.

On review from the Court of Appeals.*

Laura A. Frikert, Deputy Public Defender, Office of Public Defense Services, Salem, argued the cause and filed the brief for petitioner on review. Also on the brief was Ernest G. Lannet, Chief Defender.

_____

* Appeal from Jackson County Circuit Court, Laura Cromwell, Judge. 315 Or App 702, 500 P3d 92 (2021).

Lauren P. Robertson, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Flynn, Chief Justice, and Duncan, Garrett, and DeHoog, Justices, and Balmer and Walters, Senior Judges, Justices pro tempore.**

GARRETT, J.

The order of the Court of Appeals is reversed. The appeal is dismissed.

_____

** Nelson, J., resigned February 25, 2023, and did not participate in the decision of this case. Bushong and James, JJ., did not participate in the consideration or decision of this case.

**GARRETT, J.**

In this case, we consider the nature and scope of the Court of Appeals' authority to deny an appellant's motion to dismiss. After that court issued a decision resolving defendant's criminal appeal, he filed an unopposed motion to dismiss, which the court denied. On review, both parties agree that the Court of Appeals erred in denying defendant's motion, but they approach the analysis differently. For the reasons that follow, we conclude that the Court of Appeals erred in denying defendant's motion in this case. Accordingly, we reverse the order of the Court of Appeals and dismiss defendant's appeal.

## I.  BACKGROUND

A.  *Relevant Case Law*

The Court of Appeals recently addressed the nature and scope of its authority to resolve motions to dismiss in *State v. Moore*, 308 Or App 724, 482 P3d 222 (2021) (*Moore III*), and *State v. Lasheski*, 312 Or App 714, 493 P3d 1118 (2021) (*Lasheski II*). Although the court initially denied the defendants' motions to dismiss in those cases, the court subsequently dismissed both appeals by unpublished order. Because *Moore III* and *Lasheski II* provide important context for understanding the issues in this case, we begin by describing them and the court's ultimate resolution of the motions to dismiss in some detail.

1.  State v. Moore

The defendant in *Moore* appealed twice and obtained a remand for resentencing each time. *State v. Moore*, 290 Or App 306, 414 P3d 915 (2018) (*Moore I*); *State v. Moore*, 305 Or App 21, 469 P3d 283 (2020) (*Moore II*). After the Court of Appeals issued *Moore II*, but before the appellate judgment issued, the defendant filed an unopposed motion to dismiss. The Court of Appeals initially denied the motion. Relying on the principle that judicial power is limited to the adjudication of existing controversies, the court explained that its "approach to a motion to dismiss a party's own appeal is dependent upon whether the filing of [that] motion * * * has ended the case or controversy." *Moore III*, 308 Or App at 726. According to the court, if the filing of a motion to dismiss

ends the controversy, the court has no discretion to deny it; however, once the court has issued a decision, that decision "is the resolution of the case or controversy presented on appeal," and a party's motion to dismiss its own appeal no longer extinguishes the case or controversy as it would have if it had been filed earlier. *Id.* at 726-27. The court's reasoning was grounded in the principle of enforceability. *Id.* The court explained that enforceability distinguishes an appellate decision from an appellate judgment, which terminates the appellate courts' jurisdiction over the case.[1] *Id.* To illustrate, as a general proposition, when an appellate court grants a post-decision dismissal motion, the court is effectively precluded from issuing an appellate judgment that requires the parties to comply with its decision. Instead, the court would issue an appellate judgment dismissing the appeal, and, as a consequence, the trial court judgment would stand as though no appeal had been taken. For those reasons, the court explained, its "approach to motions to dismiss a party's own appeal filed after issuance of an opinion is discretionary, not mandatory." *Id.*

The court then identified four factors that would guide its exercise of discretion: (1) the reasons for dismissal, with settlement being encouraged and motions by a prevailing appellant being disfavored absent a compelling explanation; (2) the expenditure of court resources; (3) "whether, given the issues and reasoning expressed in the opinion, granting dismissal prior to issuance of the appellate judgment and thereby failing to enforce [the] decision, would affect public confidence in the judicial system"; and (4) "the effect, if any, that failing to enforce [the] decision by appellate judgment would have on a crime victim's right to be

---

[1] *See Moore III*, 308 Or App at 727 ("The trial court's judgment remains in effect during the pendency of an appeal. Unless the judgment is stayed, the party that prevailed in that court may enforce it by all of the ordinary methods. A decision of this court or the Oregon Supreme Court reversing or modifying the judgment does not affect the ability to enforce it until the appellate decision becomes effective. The appellate decision becomes effective when the appellate judgment issues, and that appellate judgment is effective in itself, without any action of the lower court." (Internal quotation marks and citation omitted.)); *see also* ORS 19.270(6) (providing that, subject to limited exceptions, "[j]urisdiction of the appellate court over a cause ends when a copy of the appellate judgment is mailed by the State Court Administrator to the court from which the appeal was taken pursuant to ORS 19.450").

present at a hearing under Article I, section 42(a), of the Oregon Constitution." *Id.* at 728. Applying those factors, the court denied the defendant's motion because he had offered no explanation for why dismissal was appropriate. *Id.*

Thereafter, the defendant filed a petition for reconsideration and renewed his unopposed motion to dismiss. The defendant explained that, following the remand in *Moore I*, the trial court had expressed that it would have been amenable to conducting a resentencing hearing by video conference, which would have avoided the need to transfer the defendant from his Department of Corrections (DOC) facility back to the county. After *Moore II* issued, appellate counsel sought to arrange a resentencing hearing by video conference so that, when the appellate judgment issued, the defendant would not be transferred. However, DOC's legal counsel took the position that, because *Moore II* effectively reversed the underlying judgment, DOC had no authority to hold the defendant and was required to transfer him back to the county jail. As a result of that transfer, the defendant, among other things, would have lost the job that it took him two years to obtain. Further, his medical care, which included the need for further procedures to address neck injuries that he had incurred while incarcerated, would have been interrupted. In sum, although recognizing that a post-decision dismissal risked wasting the court's resources, the defendant contended that the cost-benefit analysis had changed over time and that the unanticipated practical consequences of a resentencing demonstrated that dismissal was appropriate.

At that point, the Court of Appeals changed course. In an unpublished order, the court allowed reconsideration and granted the defendant's post-decision dismissal motion, but noted that such motions are disfavored. The court did not vacate its decision in *Moore II*, because the defendant had indicated that he was not requesting that relief. Thereafter, the appellate judgment issued dismissing the appeal.

2.   State v. Lasheski

Around the same time, the Court of Appeals was addressing another post-decision motion to dismiss in *Lasheski*. In that case, the court had (1) rejected the

defendant's assignments of error that would have resulted in the reversal of his convictions and a remand for a new trial; (2) agreed with the defendant that the trial court had erred in refusing to merge three counts into a single conviction and remanded the case for resentencing; and (3) declined, in light of that remand, to address another assignment that related to the defendant's sentence. *State v. Lasheski*, 309 Or App 140, 481 P3d 966 (2021) (*Lasheski I*). After the Court of Appeals issued *Lasheski I*, but before the appellate judgment issued, the defendant filed an unopposed motion to dismiss, explaining that he would receive no meaningful benefit from merger and resentencing even though it would reduce his criminal-history score. The defendant explained that it was likely that the same term of incarceration would be imposed on remand and that he had no intention of having "future contact with the law" when he is ultimately released from prison in his early 60s. Further, the defendant explained that he felt "comfortable and safe where he [was] presently housed" and would likely lose that placement and his full-time employment when he was transferred back to the county for resentencing.

In denying the defendant's motion in *Lasheski II*, the Court of Appeals established a presumption against post-decision dismissal motions and further explained the institutional and systemic reasons that such dismissals are disfavored. Specifically, the court described the "dual effect" of such a dismissal:

> "The effect on the appellant is return to a pre-appeal posture; from the appellant's perspective (at least, the appellant's legal perspective), it is just as though no appeal had been taken. The trial court judgment stands, as though no notice of appeal had ever been filed. Yet our published opinion *also* stands, announcing the court's holding on the issues that the appellant raised on appeal (although it has no effect on the appellant). The opinion does not somehow become less precedential because we later granted the appellant's motion to dismiss."

*Lasheski II*, 312 Or App at 718-19 (emphasis in original). According to the court, that "dual effect" could incentivize "clever litigants" to use "post-opinion dismissals to obtain what would, essentially, be advisory opinions" and

"inappropriately lead appellants to take greater risks on appeal, believing that, if the result was not to their liking, they could avoid it through a post-opinion dismissal motion." *Id.* at 719-20. The court further explained that post-decision dismissal motions "can devalue the investments that the parties' lawyers and the court system have put into resolving the questions that the appellant has raised." *Id.* at 720. Although acknowledging that a post-decision dismissal may result in "cost savings to the parties, the court, and other involved institutions and individuals," the court explained that those savings are "outweighed by the case-specific and systemic costs" that would result from routinely permitting post-decision dismissals. *Id.* at 720 n 3.

However, recognizing that there are some cases in which prevailing appellants have compelling practical reasons for no longer wanting the requested relief, the court identified seven factors—in addition to the four factors previously identified in *Moore III*—that it would consider in deciding whether to grant a post-decision dismissal:

"1. Whether any party or any victim of a defendant's crime has expressed reasoned opposition to the motion.

"2. Whether post-opinion dismissal could allow the appellant to escape possible adverse legal consequences of prevailing on an issue or issues that the appellant chose to raise on appeal.

"3. If so, whether those legal consequences were, or reasonably could have been, anticipated when the appellant filed the opening brief or at any subsequent point before the court's opinion issued.

"4. Whether the appellant's decision to raise a particular issue on appeal was influenced by the possibility of subsequently filing a post-opinion dismissal motion if the appellant was dissatisfied with the court's resolution of that issue, or simply did not want the relief granted.

"5. The reasonableness and diligence of the parties in pursuing settlement.

"6. Whether the appellant has established compelling reasons for wishing to dismiss the appeal, particularly those associated with any practical consequences of the relief granted by the appellate court.

"7. The extent to which the appellant's expressed practical reasons for wishing to dismiss the appeal reasonably could have been anticipated and appreciated when the appellant filed the opening brief or at any subsequent point before the court's opinion issued."

*Id.* at 721-22. The court emphasized that it "expect[ed] appellants seeking post-opinion dismissal to do just what the sixth [factor] require[d]: to *establish* compelling reasons for dismissal." *Id.* at 722 (emphasis in original). The court noted that, "[g]iven the significant systemic implications of granting post-opinion dismissal motions," the court expected more than "unsworn averments" concerning adverse practical consequences for a prevailing appellant. *Id.* Instead, the court explained that it expected a more complete explanation "supported when feasible by citation to legal authority, creation of an evidentiary record, or perhaps a jointly agreed statement of facts." *Id.* Further, the court indicated that, whether or not a respondent opposes the motion, it would benefit from an explanation of the respondent's position that takes into account case-specific and systemic considerations. *Id.* at 722-23. The court also invited DOC to provide input if its interests were implicated. *Id.* at 723.

Nonetheless, the Court of Appeals clearly signaled how it would resolve unopposed post-decision dismissal motions filed by appellants:

"[W]e generally will grant an appellant's unopposed post-opinion dismissal motion only in a narrow category of cases: those in which dismissal (1) would not allow the appellant to avoid possible adverse *legal* consequences of the issues that the appellant chose to raise on appeal, and (2) would allow the appellant to avoid only certain, undesired *practical* effects of the relief granted on appeal, sometimes related to the appellant's particular circumstances in the custody of [DOC]."

*Id.* at 716 (emphases in original). In other words, the Court of Appeals signaled that it generally would not grant appellants' unopposed post-decision dismissal motions.

Applying those principles, the court denied the defendant's motion because it was "supported only by unsworn and generalized assertions about the possible effects of a

remand for merger and resentencing" that "[did] not present a sufficient justification for overriding the presumption against post-opinion dismissal." *Id.* at 723. Because the defendant did not have the benefit of the court's decision in *Lasheski II*, the court gave the defendant leave to refile his motion to address the matters set forth in that decision. *Id.*

However, the defendant did not renew his motion to dismiss. Instead, the defendant filed an unopposed motion to withdraw the assignment of error that the court had declined to address in *Lasheski I*. The defendant also filed an unopposed petition for reconsideration in which he explained that, with the agreement of the state, he had filed a motion in the trial court seeking an amended judgment to conform to the Court of Appeals' remand instructions in *Lasheski I*, which the trial court had granted.[2] In his petition for reconsideration, the defendant asked the Court of Appeals to take two actions: (1) modify its former decision in *Lasheski I* to explain that the assignment of error concerning merger was moot and that the unaddressed assignment of error had been withdrawn and (2) change the disposition of the appeal to "affirmed."

At that point, noting that the case was in a "fundamentally different posture" and that dismissal "would recognize, essentially, the parties' agreed resolution of the major point in dispute" through the trial court's entry of the amended judgment, the court asked the parties whether they would object to simply dismissing the appeal. Neither party opposed dismissal. In an unpublished order, the court treated the defendant's petition for reconsideration as a motion to dismiss, which it then granted. Thereafter, the appellate judgment issued dismissing the appeal.

---

[2] Our understanding is that the parties and the trial court apparently agreed that that court had authority pursuant to ORS 137.172(1) to enter an amended judgment to conform to the remand instructions in *Lasheski I* (*i.e.*, merge counts into a single conviction) even though no appellate judgment had issued. *See* ORS 137.172(1) ("The trial court retains authority after entry of judgment of conviction or a supplemental judgment, including during the pendency of an appeal, to modify the judgment, including the sentence, to correct any arithmetic or clerical errors or to delete or modify any erroneous term in the judgment."). However, we do not endorse a practice in which trial courts enter amended judgments to conform to the remand instructions in appellate decisions before the appellate judgments issue.

B.  *The Facts*

With that understanding of the Court of Appeals' approach to resolving post-decision dismissal motions, we turn to the historic facts of this case, which are undisputed. Defendant appealed a judgment of conviction, contending that the trial court had erred (1) in instructing the jury that it could return a nonunanimous verdict and by receiving two such verdicts and (2) in admitting evidence of his consciousness of guilt. In a per curiam decision, the Court of Appeals reversed and remanded defendant's convictions on the two nonunanimous counts, but rejected his challenge to the unanimous verdicts on the remaining counts and his evidentiary challenge. *State v. Mott*, 315 Or App 702, 500 P3d 92 (2021).

Two months after the Court of Appeals issued its decision in *Mott*, but before an appellate judgment issued, defendant moved to dismiss his appeal. Noting that "[a] criminal defendant in a non-capital case has historically had a choice whether or not to initiate and continue an appeal of their convictions and sentence," defendant argued that he was "entitled to dismiss his appeal after consulting with his attorney with no further showing about how that decision impacts the opposing party or the justice system." Defendant asserted that the opinion operated only to resolve the parties' dispute, because the state had conceded that the nonunanimous verdicts must be reversed and remanded and the court's per curiam opinion summarily rejected defendant's evidentiary contention by citing to well-established case law.[3] Based on that assertion, defendant reasoned that the systemic concerns identified in *Moore III* and *Lasheski II* were not implicated. Alternatively, addressing several of the factors identified in *Moore III* and *Lasheski II*, defendant asked the Court of Appeals to exercise its discretion and grant his motion.

Defendant's motion was accompanied by his attorney's declaration. The attorney explained that defendant's

_____

[3] Defendant also asserted that the per curiam opinion was "not precedential," citing the proposed version of ORAP 10.30. However, ORAP 10.30, a temporary rule of appellate procedure concerning the Court of Appeals' issuance of nonprecedential decisions, was not in effect when the per curiam opinion was issued in this case.

reasons for dismissal were privileged but did not involve the "practical" considerations that had been at issue in other cases. If the court required the disclosure of defendant's reasons, the attorney requested leave to file a confidential declaration that was not disclosable to the state in order to preserve the privilege.[4] Among other things, the attorney also described her decision to raise the assignments of error that she had, which had not been influenced by the possibility of obtaining an advisory opinion or a post-decision dismissal; her understanding that defendant would not face adverse legal consequences on remand such as increased punishment; and the parties' unsuccessful attempts to settle the matter.[5]

The state did not oppose defendant's motion. Instead, noting that it did not have all of the information about defendant's reasons for seeking dismissal, the state deferred to the Court of Appeals as to its resolution. The state also indicated that the district attorney's office had been in contact with the victim, but that the victim had not expressed an opinion about the motion.

In an unpublished order, the Court of Appeals denied the motion without explanation. Defendant sought review of that order, which we allowed.

## II.   ANALYSIS

Defendant contends that the Court of Appeals erred in denying his motion to dismiss his appeal. The state agrees that the Court of Appeals erred in this case, although it approaches the analysis differently than defendant does. Specifically, the parties disagree about whether the Court

---

[4] *See* OEC 503(2)(a) (providing that "[a] client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client" between "the client *** and the client's lawyer"); *see also Frease v. Glazer*, 330 Or 364, 370, 4 P3d 56 (2000) (explaining that, "[a]lthough the attorney-client privilege belongs exclusively to the client, the client's attorney may claim the privilege on the client's behalf" (citations omitted)).

[5] After *Mott* issued, defendant's attorney had proposed the entry of an amended judgment dismissing the nonunanimous counts. According to defendant's attorney, the proposal would have eliminated the possibility of a retrial on those counts, reduced defendant's overall sentence by 90 days, and left his criminal-history score unaffected. After consulting with the district attorney, the state declined the offer.

of Appeals has discretion to deny an appellant's motion to dismiss. Defendant contends that the court lacks discretion; the state contends otherwise. Assuming an appellate court has discretion, the parties both contend that the Court of Appeals' presumption against post-decision dismissal motions cannot be justified by the institutional and systemic concerns on which it is based. Instead, each party points to a variety of case-specific, institutional, and systemic factors that an appellate court may consider in exercising its discretion. In all events, the parties agree that, under the circumstances of this case, defendant's unopposed post-decision dismissal motion should have been granted.

We begin by addressing whether an appellate court has discretion to deny an appellant's motion to dismiss an appeal. Although this case concerns an *unopposed post-decision* dismissal motion—as did *Moore III* and *Lasheski II*—some aspects of defendant's arguments more broadly implicate an appellate court's authority to deny an appellant's motion to dismiss—whether opposed or unopposed or whether pre- or post-decision. In particular, we understand defendant to contend that noncapital criminal defendants are *entitled* to dismiss their appeals *at any time* before the appellate judgment issues. In support of that contention, defendant makes two arguments: (1) dismissal is required when a motion is unopposed because of a lack of adverseness, and (2) dismissal is required because a defendant has the right to waive the right to appeal. We address each of those arguments in turn.

First, defendant argues that appellate courts have no authority to deny an appellant's unopposed motion to dismiss because the motion "demonstrates disinterest in continuing the litigation and a lack of ongoing adverseness between the parties" and "conclusively ends the controversy" between them. We disagree. For example, a motion to dismiss, even if granted, does not mean that the appellate decision will necessarily be vacated, and, if the respondent disagrees with the reasoning of that decision, adversity may remain. *Cf. State v. Snyder*, 337 Or 410, 417-20, 97 P3d 1181 (2004) (concluding that adversity existed where the state, which had prevailed in the Court of Appeals, petitioned for review as to the merits of that court's statutory

interpretation, but the defendant was no longer challenging his conviction and asserted that he no longer had any interest in the outcome of the case). Further, adversity may exist even when a motion is unopposed. *Cf. Snyder*, 337 Or at 418 (explaining that "'[m]any justiciable controversies go by default or without opposition'" and that "adversity exists even in cases in which no respondent appears" (quoting *Teledyne Industries v. Paulus*, 297 Or 665, 671, 687 P2d 1077 (1984) (brackets in *Snyder*))); *id.* at 418-19 (concluding that "the mere possibility that parties to a proceeding could take opposing positions satisfies the adversity requirement" and that that conclusion "demonstrates the low threshold for determining the existence of adverse legal interests"); *Teledyne Industries*, 297 Or at 671 (explaining that the absence of opposition "does not mean the plaintiff in a civil case always receives the prayer of the complaint"; instead, "the case is submitted to the court without benefit of the defendant's appearance or opposition, yet the court enters judgment only for the proper award"). As we will explain, an appellate court has discretion to deny an appellant's motion to dismiss. Thus, the filing of an unopposed motion to dismiss does not extinguish adversity.

Second, we understand defendant to argue more generally that noncapital criminal defendants have a right to voluntarily dismiss their appeals at any time before issuance of the appellate judgment.[6] According to defendant, that is so because, in a noncapital case, a direct appeal is a statutory right that is exercised voluntarily and, for that reason, the right can be waived in the absence of a legislatively imposed limitation. *See* ORS 138.020 (providing that "[e]ither the state or the defendant may as a matter of right appeal from a judgment in a criminal action in the cases prescribed in ORS 138.010 to 138.310, and not otherwise"); ORS 138.035 (providing that a defendant may appeal from certain judgments and orders); *see also State v. Hunter*, 316 Or 192, 199-200, 850 P2d 366 (1993) (explaining that constitutional and statutory rights can be waived). Defendant notes that, in the context of civil appeals, the legislature has

---

[6] In capital cases, an appeal to this court is mandatory. *See* ORS 138.052(1) ("The judgment of conviction and sentence of death entered under ORS 163.150(1)(f) is subject to automatic and direct review by the Supreme Court.").

limited an appellant's ability to waive the right to appeal by conferring discretion on the appellate courts to grant a motion to dismiss, but no such limitation exists in the context of criminal appeals. *See* ORS 19.410(1), (3) (providing that, in the context of a civil appeal, an appellate court "may dismiss" under certain circumstances); *see also* ORS 138.015 (failing to include ORS 19.410 in the list of statutes governing civil appeals that also apply to criminal appeals).

Although we agree that a defendant in a noncapital case has the right to decide whether to appeal, we disagree that, having exercised that right, it necessarily follows that the defendant also has an absolute and unqualified right to dismiss at any time. The rights of litigants coexist with the inherent authority of the court, which includes the authority to manage proceedings in an orderly and efficient manner. Our decision in *State v. Hightower*, 361 Or 412, 393 P3d 224 (2017), is instructive. There, the defendant had exercised his right to be represented by counsel at trial; however, after trial had commenced, the defendant changed his mind and sought to exercise his right to represent himself. *Id.* at 414. We explained that, although "[n]othing prevents a defendant who has invoked the right to counsel or the right to self-representation from later waiving that right[,]" the defendant's "right to waive is not absolute and unqualified." *Id.* at 417. We further explained that, "once a trial has begun, a number of interests other than the defendant's [constitutional right to self-representation] come into play," including "the trial court's overriding obligation to ensure the fairness and integrity of the trial and its inherent authority to conduct proceedings in an orderly and expeditious manner." *Id.* at 417-18. "In light of those additional interests that are triggered by the commencement of trial, any invocation of the right to counsel or to self-representation that occurs after that time is subject to the court's discretion." *Id.* at 418.

As do trial courts, appellate courts have authority to conduct their proceedings in an orderly and expeditious manner. *See* ORS 1.010(3) (providing that every court of justice has power "[t]o provide for the orderly conduct of proceedings before it"). This court has recognized that authority in a variety of contexts. *See, e.g.*, *Sills v. State of Oregon*, 370 Or 240, 245-46, 518 P3d 582 (2022) (explaining that

the "fugitive dismissal rule" "is based on the principle that appellate courts possess inherent authority to dismiss a defendant's appeal if that defendant has absconded from the court's jurisdiction" and that the justifications for the rule offered by most courts "relate to the dignity and efficient functioning of the court before which the case is pending" (internal quotation marks omitted)). Thus, we agree with the Court of Appeals that, once an appellant exercises the right to appeal, the court acquires an interest in the proceeding that is inconsistent with the view that an appellant has the unilateral, absolute right of dismissal at any time.

We also agree with the Court of Appeals that the initiation of an appeal implicates case-specific, institutional, and systemic interests. For that reason, an appellate court, in deciding how to resolve an appellant's motion to dismiss, may consider a variety of factors, such as (1) whether dismissal would effectuate the parties' settlement agreement or would otherwise serve to recognize the parties' agreed resolution of the dispute; (2) whether there is reasoned opposition to the motion from another party or a crime victim or there are other indications that a party would be prejudiced by dismissal; (3) whether there are indications that the appellate process is being abused (*e.g.*, a party initiated the appeal to obtain an advisory opinion or moved to dismiss to avoid adverse legal or other practical consequences that were or reasonably could have been anticipated earlier); (4) whether, or the extent to which, appellate resources have been expended and additional systemic resources will need to be expended if the motion is denied; and (5) whether there are other indications that dismissal of the appeal is not in the interests of justice (*e.g.*, would adversely affect the efficient and orderly administration of justice, the fairness or integrity of the proceeding, or the public's confidence in the judicial system). In *Moore III* and *Lasheski II*, the Court of Appeals effectively identified many of those factors.

However, in those cases the Court of Appeals also established a presumption against post-decision dismissal motions that can be overcome only if an appellant establishes compelling reasons. That court justified the presumption on two grounds: (1) its authority to enforce its decisions, *Moore III*, 308 Or App at 725-27, and (2) institutional and

systemic considerations, *Lasheski II*¸ 312 Or App at 718-21. As we will explain, although each of those grounds may be appropriately considered in a given case, neither justifies a presumption disfavoring post-decision dismissal motions.

Turning first to the Court of Appeals' enforcement justification, we agree that an appellate court has authority to enforce its decisions. *See* ORS 1.010(4) (providing, in part, that every court of justice has power "[t]o compel obedience to its judgments, orders, and process"). As the Court of Appeals explained in *Lasheski II*, unless vacated, its published decision announcing the court's holding on the issues raised on appeal remains precedential and governs future litigants even if the appeal is later dismissed. 312 Or App at 719. Post-decision dismissal of an appeal, which leaves the decision intact (unless the court agrees to vacate it, which is governed by separate principles not at issue here[7]), thus has no effect on the authority of the court as to litigants *other* than the parties themselves. As to the parties, however, the effect of a post-decision dismissal is to remove the court's ability to issue an appellate *judgment* and thereby enforce its decision *as to those parties.* Thus, when an appellant files a post-decision dismissal motion, the court's interest in its own enforcement power is the interest in compelling *that appellant* to ultimately abide by the court's decision. There may be case-specific reasons to require an appellant to do so; however, it is more appropriate to make that determination on a case-by-case basis rather than applying a presumption against all post-decision dismissal motions.

Similarly, that presumption is not justified by the institutional and systemic considerations identified by the Court of Appeals. As noted, in *Lasheski II*, the Court of Appeals pointed to the "dual effect" where, if a post-decision motion to dismiss is granted, then the trial court judgment stands as though the appellant had never initiated an appeal, but the appellate court's published decision also stands, affecting future litigants but not the appellant.

---

[7] The parties in this case—like the parties in *Moore III* and *Lasheski II*—did not request that the Court of Appeals vacate its decision. *See Rogue Advocates v. Board of Comm. of Jackson County*, 362 Or 269, 273 n 4, 407 P3d 795 (2017) (explaining that vacatur is an extraordinary, discretionary remedy to which a party must show an equitable entitlement).

The court noted the ways that the "dual effect" inappropriately incentivizes clever litigants and devalues the systemic investments made in resolving the appeal. The "dual effect" exists whenever an appeal is dismissed post-decision and that decision is not vacated. However, there are some circumstances in which post-decision dismissal should not be disfavored. For example, as the court noted in *Moore III*, settlements are "always encouraged." 308 Or App at 728. A court will generally grant a post-decision dismissal motion when the parties have settled their dispute. Thus, to the extent that the Court of Appeals' reasoning in *Lasheski II* reflects a concern that the "dual effect" incentivizes clever litigants to abuse the system (*e.g.*, seek advisory opinions, fail to engage in a proper cost-benefit analysis when deciding which assignments of error to raise and then dismiss if the results are not to their liking) or devalues the expenditure of systemic resources, it is, again, more appropriate to address those concerns on a case-by-case basis rather than by applying a presumption against all post-decision dismissal motions.

Apart from the presumption, the Court of Appeals also explained that, in exercising its discretionary authority, appellants seeking dismissal—at least those seeking dismissal post-decision—are required "to *establish* compelling reasons."[8] *Lasheski II*, 312 Or App 722 (emphasis in original). Compelling reasons, in the Court of Appeals' view, appear to be limited to a narrow set of circumstances—that

---

[8] To "establish" compelling reasons, the Court of Appeals explained that "unsworn averments" are insufficient and that it expected a more complete explanation "supported when feasible by citation to legal authority, creation of an evidentiary record, or perhaps a jointly agreed statement of facts." *Lasheski II*, 312 Or App at 722. However, we note that motions to dismiss and the averments that they contain are typically signed by a party's attorney and subject to ORCP 17, which has been adopted as a rule of appellate procedure by this court and the Court of Appeals. ORAP 1.40(4). Pursuant to ORCP 17, the attorney's signature certifies, among other things, that the motion "is not being presented for any improper purpose," ORCP 17 C(2); that the "legal positions taken in the *** motion *** are warranted by existing law," ORCP 17 C (3); that "the allegations and other factual assertions in the *** motion *** are supported by evidence," ORCP 17 C(4); and that those certifications are based on the attorney's "reasonable knowledge, information and belief, formed after the making of such inquiry as is reasonable under the circumstances," ORCP 17 C(1). Attorneys who make false certifications may be sanctioned. ORCP 17 D; *see* ORAP 1.40 n 1 (so indicating); ORAP 13.25 (providing for petitions for sanctions).

is, circumstances in which dismissal "would not allow the appellant to avoid possible adverse *legal* consequences of the issues that the appellant chose to raise on appeal," and "would allow the appellant to avoid only certain, undesired *practical* effects of the relief granted on appeal, sometimes related to the appellant's particular circumstances in the custody of [DOC]." *Lasheski II*, 312 Or App at 716 (emphases in original).

Although the parties agree that the Court of Appeals was incorrect to require an appellant to establish compelling reasons for dismissal, they disagree about the role an appellant's reasons should play in the court's discretionary decision. Defendant argues that, because a defendant's reasons for seeking dismissal "are not particularly probative" of the considerations underlying a court's decision to dismiss, they "should not generally be a consideration." In particular, defendant notes that, in some instances, requiring a defendant to establish compelling reasons for dismissal may "wrongly intrude on the attorney-client privilege" (*e.g.*, the defendant's reasons may involve admissions of guilt and acceptance of responsibility). The state counters that a defendant's reasons for dismissal are relevant considerations that "provide the state and the victim with an opportunity to provide a meaningful response to the defendant's motion" and provide the court with information that may help alleviate any institutional and systemic concerns that the court may have (*e.g.*, wasted systemic or institutional resources or the defendant's avoidance of legal or practical consequences that were or could have been reasonably anticipated earlier in the process).

Certainly, an appellant's reasons for seeking dismissal can be helpful to a court in making its discretionary decision, particularly when dismissal is sought after the appellate process is well underway. For example, once the Court of Appeals understood the defendant's unanticipated practical reasons for seeking dismissal in *Moore*, the court dismissed the appeal by unpublished order. However, we are not persuaded that an explanation of an appellant's reasons for seeking dismissal—whether compelling or not—is a necessary prerequisite for granting the appellant's motion. We also agree that such a requirement could

create complications related to the attorney-client privilege. Nonetheless, to assist the court in making its decision, an appellate court may ask for an explanation and appellants may choose to provide one when appropriate and permissible. As the state notes, defendants remain free not to disclose that information, "but that choice may impact whether the court will grant their motion."

With the foregoing principles in mind, we turn to the Court of Appeals' decision in this case. The decision whether to grant or deny an appellant's motion to dismiss—whether opposed or unopposed or pre- or post-decision—is committed to the sound discretion of the appellate court. Discretionary decisions are those in which a court chooses among several legally correct outcomes. *See, e.g.*, *State v. Harrell/Wilson*, 353 Or 247, 254, 297 P3d 461 (2013) ("[J]udicial discretion is always bounded by a simple framework: It must be lawfully exercised to reach a decision that falls within a permissible range of legally correct outcomes."). A court can exceed the bounds of its permissible discretion in a variety of ways. *Espinoza v. Evergreen Helicopters, Inc.*, 359 Or 63, 116-18, 376 P3d 960 (2016). For example, a court "may abuse its discretion if its decision is based on predicate legal conclusions that are erroneous." *Id.* at 117. A court may also abuse its discretion if its decision is "clearly against all reason and evidence." *Id.*; *see Botofan-Miller and Miller*, 365 Or 504, 506, 446 P3d 1280 (2019), *cert den*, ___ US ___, 141 S Ct 134 (2020) (explaining that appellate courts will uphold a trial court's best interests determination "unless that court exercised its discretion in a manner that is clearly against all reason and evidence" (internal quotation marks omitted)).

Here, the Court of Appeals denied defendant's motion to dismiss without explanation. Because defendant was not seeking to avoid adverse practical effects from the relief granted on appeal, his motion did not fit within the narrow category of cases in which the Court of Appeals had indicated a willingness to grant a post-decision motion to dismiss. *See Lasheski II*, 312 Or App at 716 ("[W]e generally will grant an appellant's unopposed post-opinion dismissal motion only in a narrow category of cases: those in which dismissal[, among other things,] * * * would allow the appellant to avoid only certain, undesired *practical* effects

of the relief granted on appeal[.]" (Emphasis in original.)). Thus, we understand that the court's denial of defendant's motion reflected its application of the presumption against post-decision dismissal motions established in *Moore III* and *Lasheski II*.[9] Having concluded that the presumption is not justified for the reasons advanced by the Court of Appeals, we further conclude that that court abused its discretion in denying defendant's motion. *See State v. Fults*, 343 Or 515, 523, 173 P3d 822 (2007) (concluding that the Court of Appeals abused its discretion in considering plain error based on the rationale that the court had expressed).

In that circumstance, we would typically remand to the Court of Appeals to permit it to undertake its discretionary assessment again. *See id.* (explaining that, when a court abuses its discretion, the appropriate disposition is to reverse and remand if that court, "after weighing all the relevant factors," could "justify its choice in some different way"); *State v. Vanornum*, 354 Or 614, 631, 317 P3d 889 (2013) (explaining that "[t]he nature of discretion is that it is best exercised by the entity principally charged with its exercise"). However, we conclude that a remand in this case is unnecessary because, under the circumstances here, there is only one legally correct outcome. *See State v. Rogers*, 330 Or 282, 312, 4 P3d 1261 (2000) (reasoning that, "[i]f there is only one legally correct outcome, 'discretion' is an inapplicable concept"). As we will explain, because no case-specific, institutional, or systemic factors weigh in favor of

---

[9] Defendant contends that the Court of Appeals erred in denying his motion because that court failed to provide a "sufficient explanation." However, we understand the court's decision to be based on its default rule that dismissal would only be granted in the "narrow category of cases" identified in *Lasheski II*. 312 Or App at 716; *cf. Hightower*, 361 Or at 421 (explaining that, although appellate review is facilitated by an express statement of a trial court's findings, such findings are not required provided that the record reveals the reasons for the trial court's action and the appellate court is not left to speculate about the rationale for the trial court's decision). In all events, we note that meaningful appellate review generally is facilitated when a court explains its discretionary decision even when the explanation is minimal and not complex. *Cf. Hightower*, 361 Or at 413 (reasoning that, "[i]f a trial court exercises [its] discretion to deny a defendant's motion for self-representation, it should make a record that reflects how it exercised that discretion"); *McCarthy v. Oregon Freeze Dry Inc.*, 327 Or 84, 957 P2d 1200, *adh'd to as clarified on recons*, 327 Or 185, 957 P2d 1200 (1998) (explaining that, to permit meaningful appellate review, the Court of Appeals must describe the relevant facts and legal criteria supporting its attorney fee awards).

denying defendant's motion to dismiss, doing so would be an abuse of discretion. *See Espinoza*, 359 Or at 117 (reasoning that a court abuses its discretion if its decision is "clearly against all reason and evidence").

Although the parties did not formally settle their dispute, defendant's motion was unopposed by the state and the victim and there are no indications that any party otherwise will be prejudiced by dismissal. Under that circumstance, a dismissal would effectively recognize the parties' agreed resolution of their dispute (*i.e.*, leave the trial court judgment in place as if no appeal had occurred). In addition, defendant's attorney explained in the dismissal motion and accompanying declaration that the appeal had not been filed for an inappropriate purpose and that she was unaware of any adverse legal or practical consequences that defendant was seeking to avoid through dismissal. Defendant's attorney further explained that defendant's reasons for seeking dismissal were protected by the attorney-client privilege and offered to share them in a way that would preserve the privilege.

The parties expended resources in briefing and arguing the case, and, under the circumstances, which included the state's concession, defendant likely knew well in advance of the issuance of the court's decision that his appellate challenge to the nonunanimous counts would result in a remand. The Court of Appeals also expended its limited resources in reviewing the case and issuing a decision that essentially accepted the state's concession and applied established precedent to reject defendant's other challenges.

Nonetheless, the denial of defendant's motion has resulted—and, if upheld, would continue to result—in the significant expenditure of additional systemic resources. To illustrate, in addition to litigating the denial of his dismissal motion in this court, we are holding in abeyance a second petition that defendant filed to preserve his ability to challenge the merits of the Court of Appeals' decision in the event that we were to uphold the denial of his motion to dismiss (*State v. Mott* (S069287)). And even if defendant had not sought review in this court, the case would have

been remanded to the trial court on issuance of the appellate judgment. The parties would have to relitigate the two nonunanimous counts, which could result in a second trial. In turn, such litigation would require any victims to again decide whether or how to exercise their constitutional rights. *See, e.g.*, Or Const, Art I, § 42 (describing victim's rights). At a time when criminal defense resources are severely limited, the expenditure of systemic resources resulting from the denial of this motion is significant.

Finally, there is no indication that the appellate process is being abused. Nor is there any indication that the interests of justice generally would be prejudiced by dismissal.[10]

Thus, we hold that the Court of Appeals erred in denying defendant's post-decision dismissal motion when that motion was unopposed; when dismissal would result in significant systemic savings to the parties, the trial court, the victim, and others (*e.g.*, the county, DOC, and potential jurors and witnesses); and when dismissal would not prejudice the interests of justice. Accordingly, we reverse the order of the Court of Appeals and, because there are no remaining issues to resolve on appeal, dismiss defendant's appeal.[11]

The order of the Court of Appeals is reversed. The appeal is dismissed.

---

[10] Although we acknowledge that the effect of a dismissal in this case is to leave two nonunanimous verdicts in place, that is effectively defendant's choice and part of his agreed resolution of this dispute. The result would be the same if a defendant was convicted by nonunanimous verdict and chose not to appeal or seek post-conviction relief. *See Watkins v. Ackley*, 370 Or 604, 607, 523 P3d 86 (2022) ("[W]hen a petitioner seeks post-conviction relief, on Sixth Amendment grounds, from a judgment of conviction which was based on a nonunanimous verdict and which became final before *** [*Ramos v. Louisiana*, 590 US ___, 140 S Ct 1390, 206 L Ed 2d 583 (2020),] issued, the petitioner is entitled to relief—assuming that none of the procedural defenses in the Post-Conviction Hearings Act have been raised and sustained.").

[11] Because we are dismissing defendant's appeal, which leaves the trial court judgment in place as if no appeal had occurred, we designate the state as the prevailing party.