96 July 31, 2024 No. 524

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

RICHARD WEAVER, JR.,
*Plaintiff-Appellant,*

*v.*

Josh HIGHBERGER,
Superintendent,
Oregon State Correctional Institution, and
Colette Peters, Director,
Oregon Department of Corrections,
*Defendants-Respondents.*

Marion County Circuit Court
20CV19928; A176508

Donald D. Abar, Judge.

Submitted March 13, 2023.

Jedediah Peterson and O'Connor Weber, LLC, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Julia Glick, Assistant Attorney General, filed the brief for respondents.

Before Ortega, Presiding Judge, Powers, Judge, and Hellman, Judge.

HELLMAN, J.

Affirmed.

**HELLMAN, J.**

Plaintiff appeals a judgment that terminated the trial court's continuing jurisdiction over a case in which he obtained habeas corpus relief on the basis that defendants deprived him of constitutionally required medical care. On appeal, he raises three assignments of error. In the first, he asserts that the trial court erred in denying his motion for a fourth emergency hearing on defendants' alleged noncompliance with the judgment granting habeas relief and the subsequent orders enforcing the judgment. In the second, he asserts that the trial court erred in denying his request for reconsideration of its ruling that defendants had complied with the judgment. In his third, he asserts that the trial court erred in terminating continuing jurisdiction. Because we conclude that the trial court did not abuse its discretion in making any of those rulings, we affirm.

In April 2020, plaintiff filed a petition for a writ of habeas corpus alleging that defendants acted with deliberate indifference to his serious medical needs by failing to treat: (1) his respiratory issues (asthma and bronchitis) exacerbated by COVID-19; (2) his chronic pain syndrome that causes him wrist pain; and (3) his high cholesterol. The trial court granted the writ and appointed counsel, who filed a replication.

At the replication hearing, in addition to the claims in his replication, plaintiff presented evidence on two additional claims: that defendants failed to provide plaintiff with sufficient inhalers for his asthma to receive the amount of medication that he was prescribed, and that defendants were failing to adequately treat his chronic pain syndrome.

In January 2021, the trial court issued a letter opinion. The court found that defendants were deliberately indifferent to plaintiff's significant medical needs, granted plaintiff habeas relief, and ordered defendants to remedy the unconstitutional conditions of plaintiff's confinement. In a February 2021 formal judgment, the court ordered defendants to provide and arrange the following medical care for plaintiff:

(1)  "arrange for plaintiff to see a pulmonary specialist for pulmonary function testing and such other diagnostic workup as that specialist recommends," and follow the specialist's treatment recommendations;

(2)  "immediately make sufficient inhalers available to plaintiff to allow him to use the prescribed amount";

(3) "ensure that plaintiff consults with an orthopedic surgeon following his wrist MRI and * * * comply with that physician's treatment recommendations," and until that treatment occurs, "implement effective pain control measures for plaintiff's wrist"; and

(4)  "ensure that plaintiff is seen by a pain control specialist regarding his chronic pain syndrome and * * * follow the treatment recommendations of said specialist."

The trial court explicitly retained jurisdiction over the case "to ensure compliance with the court's orders."

Over the course of the next month, plaintiff sought three emergency hearings to address defendants' failures to comply with the terms of the original judgment, as well as to compel defendants to address a back injury plaintiff sustained after he jumped down three stairs. The trial court issued a supplemental order after each hearing.

The first supplemental order required defendants to refer plaintiff to a pain management specialist. And given the new back injury plaintiff suffered, it also ordered defendants to refer plaintiff to the Salem Spine and Pain Center or to have Dr. Warren Roberts—the Chief Medical Officer for the Department of Corrections—evaluate plaintiff's back. If neither of those two options were possible, it ordered defendants to send plaintiff to the emergency room.

The second supplemental judgment ordered defendants to refer plaintiff to the Salem Spine and Pain Center or to Oregon Health & Science University (OHSU)'s pain clinic, and to provide plaintiff a wheelchair and an aide to assist plaintiff in moving around the prison.

The third supplemental judgment—arising after plaintiff complained that defendants had replaced his wheelchair with a walker that caused him wrist pain—again

ordered defendants to provide plaintiff a wheelchair and an ambulatory aide.

Ten days after the third hearing, plaintiff filed a motion for a fourth emergency hearing, alleging that defendants had failed to comply with all of the court's original and supplemental judgments. He requested that the court find defendants in contempt and sought his release from prison for the alleged noncompliance. The court scheduled a hearing for the same morning that it received plaintiff's motion. However, prior to the hearing, the case was reassigned to a new judge as part of the administrative process of managing the retirement of the judge who had been hearing the case.

At the start of the hearing, the new judge indicated that he had not had sufficient time to review the motion, its exhibits, or the case file and was unclear about the purpose of the hearing. He also indicated that he was disinclined to hold the hearing at that time, given his unfamiliarity with the case and the state's inability to adequately respond. After hearing from plaintiff's counsel about the reason for the hearing and defendants' position on the timing of the fourth emergency motion, the judge set the hearing over for several weeks.

After holding the rescheduled hearing the court found that defendants had complied with the court's original judgment ordering medical treatment, except for scheduling wrist reconstruction surgery as recommended by an orthopedic surgeon. The court recognized that "the treatment received is not to plaintiff's satisfaction," yet determined that "defendant[s] ha[ve] nonetheless complied with the court's orders." The court retained jurisdiction over the case until defendants provided evidence that they scheduled wrist surgery for plaintiff. Defendants scheduled the surgery and filed a motion to terminate continuing jurisdiction, informing the court of that development. The trial court granted defendants' motion, terminated its continuing jurisdiction, and closed the case. The trial court later denied plaintiff's motion for reconsideration. This appeal followed.

In plaintiff's first assignment of error, he argues that the trial court erred when it failed to hold a hearing

on his fourth emergency motion on the originally scheduled date. We reject plaintiff's argument because the court did hold such a hearing. Although the hearing was held later than plaintiff wished, "[i]t is well established that a trial court generally possesses broad discretion to control the proceedings before it." *State v. Rogers*, 330 Or 282, 300, 4 P3d 1261 (2000) (citing ORS 1.010). Here, the trial court was presented with a fourth emergency motion in a complex medical habeas case at a hearing that was set for the morning that the motion was filed. The judge candidly admitted that he had not had time to review the materials in the fourth emergency motion, let alone the case file, and was not prepared to engage with and rule on the issues. Moreover, the judge was troubled that defendants had not had adequate time to review and respond to the motion, which was seeking an order of contempt and plaintiff's release. Under those circumstances, the trial court's decision to postpone the hearing does not amount to an abuse of discretion.

In his second assignment of error, plaintiff asserts that the trial court erred when it denied his motion for reconsideration of the court's order finding that defendants had complied with the initial judgment because the evidence demonstrated that defendants had not, in fact, complied.[1] We review a trial court's denial of a motion for reconsideration for abuse of discretion. *Varro and Varro*, 300 Or App 716, 736 n 8, 454 P3d 35 (2019) (citing *Lang v. Rogue Valley Medical Center*, 361 Or 487, 497 n 8, 395 P3d 563 (2017)). In so reviewing the trial court's judgment on reconsideration, we are bound by the trial court's explicit and implicit findings of fact if there is evidence in the record to support them. *State v. Johnson*, 335 Or 511, 523, 73 P3d 282 (2003).

We conclude that the trial court did not abuse its discretion in denying plaintiff's motion for reconsideration because there was evidence in the record from which the court could have determined that defendants complied with

---

[1] We observe that defendants did not raise any challenges to our ability to review the denial of a motion for reconsideration, and that motions for reconsideration can create procedural problems on appeal. *See Carter v. U.S. National Bank of Oregon*, 304 Or 538, 545, 747 P2d 980 (1987) (Peterson, J., concurring) (characterizing motions for reconsideration as a "motion asking for trouble" and discouraging their use).

the four orders in the court's judgment. We address each in turn.

With regard to the first order to take plaintiff to a pulmonary specialist, defendants provided evidence that plaintiff saw a pulmonologist associated with Salem Pulmonary Associates. The pulmonologist recommended that plaintiff switch from his Arnuity inhaler to an Advair HFA inhaler, that he continue using Albuterol, that he continue taking pulmonary functioning tests, and that he obtain allergy and blood-count labs. By the fourth emergency hearing, defendants approved plaintiff for an Advair HFA inhaler, arranged for pulmonary functioning tests, and had ordered the necessary allergy and blood-count labs.

As to the second order to provide plaintiff with sufficient inhalers, defendants had refilled plaintiff's inhaler and established a system for him to request early refills.

Regarding the third order to have plaintiff consult with an orthopedic surgeon for his wrist pain, the record shows that plaintiff was seen by Hope Orthopedics. The orthopedic specialists saw plaintiff for scaphoid subluxation (SL), found acute SL ligament injury, and recommended that plaintiff return to plan SL reconstruction surgery. Defendants approved plaintiff for the SL surgery and agreed to treat his pain in the meantime, providing him with lidocaine patches and acetaminophen inside of his prison cell. Although, at the fourth emergency hearing, defendants had not yet scheduled the SL reconstruction surgery, they later provided confirmation of his scheduled surgery.

Finally, with regard to the fourth order that defendants ensure plaintiff consult with a pain control specialist, plaintiff had a phone consultation with OHSU's Comprehensive Pain Center to assess his neck, back, and wrist pain. The pain control specialists determined that plaintiff was not a good candidate for additional surgery. Instead, they recommended medical management for his chronic pain and that he stop taking opioids to treat the pain. The specialists recommended a list of medications for plaintiff's chronic pain, and defendants approved the recommended medications (with the exception of one, which

defendants would later determine was not appropriate for plaintiff) and stopped providing opioids.

Although plaintiff presented the testimony of Dr. Baskerville in support of his argument that the treatment and care provided to plaintiff did not comply with the court's orders, the trial court was not required to be persuaded by Dr. Baskerville's testimony. It was permitted to find defendants' evidence more persuasive, and we are bound by that credibility determination. *Johnson*, 335 Or at 523 (holding that an appellate court is bound by a trial court's "finding that a party's evidence is not sufficiently persuasive"). Accordingly, we find no abuse of discretion in the trial court's denial of plaintiff's motion for reconsideration.

In plaintiff's third assignment of error, he argues that the trial court erred when it granted defendants' motion to terminate jurisdiction over the case. We have not yet directly addressed our standard of review when evaluating a trial court's termination of continuing jurisdiction in a habeas corpus case. After considering the nature of the decision at issue here, we conclude that the most appropriate standard of review is for abuse of discretion. We reach that conclusion for three reasons.

First, the authority that permits the court to retain jurisdiction to enforce its orders is a discretionary one. It is well established that trial courts have inherent judicial powers to perform their functions, which "include the power to compel obedience to a court's own orders and judgments." *Law v. Zemp*, 362 Or 302, 327, 408 P3d 1045 (2018) (citing *Ortwein v. Schwab*, 262 Or 375, 385-86, 398 P2d 757 (1972), *aff'd*, 410 US 656, 93 S Ct 1172, 35 L Ed 2d 572 (1973)); *see also* ORS 1.010(4) ("Every court of justice has power *** [t]o compel obedience to its judgments, orders and process ***."). And the trial court has "broad discretion" to exercise those powers. *Durocher and Durocher*, 319 Or App 223, 227, 509 P3d 682 (2022). Although we have cautioned that habeas courts do not have the authority to broadly "supervise *** the administration of a penal institution," *Johnson v. Cupp*, 29 Or App 541, 543, 564 P2d 734, *rev den*, 279 Or 191 (1977), we have acknowledged that a habeas court can decide to retain jurisdiction to ensure compliance with specific orders

that arise out of a medical habeas case. *Garges v. Bowser*, 314 Or App 609, 610-11, 498 P3d 341 (2021).

Second, there is no one legally correct way to write a judgment that addresses a finding of deliberate indifference. The superintendent of a prison must provide the constitutionally required medical care, but there is a wide range of steps a court can order the superintendent to take to make that happen. Therefore, the terms of the judgment result from an exercise of the court's discretion. *See Interstate Roofing, Inc. v. Springville Corp.*, 347 Or 144, 157-58, 218 P3d 113 (2009) (recognizing that a trial court is permitted a wide range of discretion in crafting the terms in a written judgment "to convey the court's concluding decision or decisions").

Third, in the context of a medical habeas case, the determination of whether the superintendent has complied with the judgment involves a highly factual determination. Determining whether the provided medical care meets a constitutionally required level involves reviewing documentary evidence, hearing witness testimony, evaluating competing medical opinions, making credibility determinations, and deciding what weight to give the evidence. The court must then weigh the facts against the complex constitutional standard of "deliberate indifference."

In addition, terms in the judgment may be open to interpretation. Consider a situation in which a court finds deliberate indifference and orders a superintendent to send an adult in custody (AIC) to a specialist for a knee pain evaluation and to follow the specialist's recommendations. Among other recommendations, that specialist indicates that the AIC needs "appropriate physical therapy" and "regular pain evaluations." If the AIC thereafter disputes that the physical therapy the superintendent provides is "appropriate" or that the pain evaluations are "regular," the court will be called upon to make a discretionary decision as to whether the superintendent has followed the recommendations, and therefore complied with the judgment.

In sum, a court necessarily engages in numerous discretionary decisions to reach a final determination as

to whether the superintendent has complied with a judgment to cure deliberate indifference. Because there is no one legally correct way to make those decisions, our review of them is for an abuse of discretion.

To be sure, there are outer limits on a court's discretion to find that a superintendent has complied with a judgment. Among other things, a court exceeds its discretion if its decision is "clearly against all reason and evidence." *State v. Mott*, 370 Or 830, 848, 527 P3d 758 (2023) (quoting *Botofan-Miller and Miller*, 365 Or 504, 506, 446 P3d 1280 (2019), *cert den*, ___ US ___, 141 S Ct 134 (2020)). Thus, a court could not find that the superintendent complied with a judgment in the absence of any evidence that they did. But when a court's decision is "within the range of legally correct discretionary choices and produced a permissible, legally correct outcome, then the trial court did not abuse its discretion." *Rogers*, 330 Or at 312. And, as always when reviewing a trial court's findings of fact, we defer to those fact findings so long as there is evidence in the record to support them. *Johnson*, 335 Or at 523.

Here, we conclude that the trial court did not abuse its discretion when it granted defendants' motion to terminate jurisdiction. As explained above, the record contains sufficient evidence for the trial court to decide that defendants had complied with the terms of the judgment. Once that occurred, it was within the trial court's discretion to terminate continuing jurisdiction.

Apart from challenging the trial court's decision to terminate jurisdiction based on compliance with the original judgment, plaintiff also contends that the trial court erred by terminating jurisdiction without first determining whether defendants complied with the court's supplemental orders. The trial court did not consider whether defendants violated the subsequent orders because it found them irrelevant to the question before it, which was whether defendants had complied with the original judgment. The trial court determined that it would only address the supplemental orders if it found that defendants were in contempt of the judgment.

On appeal, defendants take the position, as they did below, that the supplemental orders were not properly entered because they were not orders to enforce the judgment but instead orders that addressed issues that were beyond the scope of the original judgement. Our initial review of the record suggests that defendants may be correct. However, we do not need to conclusively decide whether the trial court had the authority to issue the supplemental orders, because we conclude that the trial court had the discretion to terminate continuing jurisdiction based on its determination that defendants had complied with the original judgment. As we explained above, continuing jurisdiction to enforce a judgment is a discretionary decision on the part of the trial court. Because the trial court had discretion to exercise continuing jurisdiction, it had discretion to terminate such jurisdiction when it saw fit. Here, the court's decision to terminate jurisdiction without specifically analyzing defendants' compliance with the supplemental orders was not beyond the bounds of reason or contrary to the evidence in the record. Thus, the court's decision to terminate continuing jurisdiction fell within the range of legally permissible outcomes.[2] As such, the court did not abuse its discretion in terminating continuing jurisdiction over the case.

Affirmed.

---

[2] We note that the court's termination of continuing jurisdiction does not bar plaintiff from seeking to enforce the judgment in other ways—such as through contempt proceedings—if defendants fail to provide the treatment ordered in the original judgment or from seeking additional relief—such as filing a new habeas corpus petition—if defendants fail to treat plaintiff's serious medical needs in the future.